In re Wayne Elmer WARE, Debtor.

STATE OF IOWA, ex rel. Lois WARE; Lois Ware individually; Timothy, Scott, Holly, and Wayne Aaron by Lois Ware, their mother and next friend; State of Iowa, Iowa Department of Social Services, Plaintiffs,

v.

Wayne Elmer WARE, Defendant.

Bankruptcy No. 81–03124.
Adv. No. 81–0355.

United States Bankruptcy Court,
N. D. Iowa, C. D.

July 21, 1982.

Peter C. Hart, Asst. Emmet County Atty, Spencer, for plaintiffs.

David A. Sergeant, Fort Dodge, Iowa, for defendant.

## MEMORANDUM

WILLIAM W. THINNES, Bankruptcy Judge.

The Plaintiff's 11 U.S.C. § 523(a)(5) Complaint seeks a finding that debts arising from assigned child support installment payments fixed by a state court dissolution decree and due subsequent to the date of the filing of the Defendant's bankruptcy petition are not included within the scope of the Defendant's bankruptcy discharge. Subsequent to the filing of this Complaint, however, the amendment to 11 U.S.C. § 523(a)(5) became effective. The Court will first address the question whether the amendment applies to this case because such an application would render the Plaintiff's Complaint moot. Because the Court finds that the amendment does not apply to this case, the Court will then address the

question initially raised by the Plaintiff's Complaint.

## I

■ The law in effect at the time the Defendant filed his bankruptcy petition on April 17, 1981, discharged obligations for alimony, support, or maintenance payments that had been assigned to any third person or entity, including a governmental unit. 11 U.S.C. § 523(a)(5) (1976 ed. Supp. III). The amendment to 11 U.S.C. § 523(a)(5) became effective on August 13, 1981. That amendment amends 11 U.S.C. § 523(a)(5) to make support payments assigned to the state pursuant to § 402(a)(26) of the Social Security Act nondischargeable.[1] The terms of the amendment, however, do not state the manner in which it is to be applied to 11 U.S.C. § 523(a)(5) complaints in bankruptcy proceedings that have been commenced prior to the effective date of the amendment.[2] Following *In the Matter of Flamini*, 19 B.R. 303, 8 B.C.D. 1289, 1291 (Bkrtcy. E.D.Mich., 1982), this Court has held that the law in effect at the time the debtor's bankruptcy petition was filed applies in determining whether the support payments assigned by the debtor's ex-spouse to a state governmental unit in return for ADC payments are dischargeable. *In re Morris*, 21 B.R. 816 at 822 (Bkrtcy. N.D. IA, 1982) (hereinafter referred to as *Morris* II).[3] As noted, the Debtor's bankruptcy petition was filed prior to August 13, 1981. The law to be applied in this dischargeability proceeding is the law that existed prior to August 13, 1981. That law

discharged debts for alimony, support or maintenance payments that had been assigned by the debtor's ex-spouse to a person or entity, including a governmental unit.

## II

The Court, having decided that pre-August 13, 1981, law applies to this dischargeability complaint, must now address the Plaintiff's contention that debts arising from assigned child support installment payments that are due subsequent to the date of the filing of a debtor's bankruptcy petition are not within the scope of the debts discharged by 11 U.S.C. § 523(a)(5) as it read prior to August 13, 1981. This question has already been addressed by the United States Bankruptcy Court for the Southern District of Iowa in the case of *In the Matter of Thomas*, 12 B.R. 432 (Bkrtcy. S.D. IA, 1981), *aff'd* in part; *remanded* in part; Civil No. 81–88–D–1 (Dist. Ct. S.D. IA, January 25, 1982).[4]

■ In the case of *In the Matter of Thomas, supra*, the debtor had been ordered by a state court dissolution decree to make support payments to his former spouse on behalf of his two minor daughters until the children reached 18 years of age. The debtor's former spouse assigned her right to the support payments to the state in return for ADC payments. The state filed an 11 U.S.C. § 523(a)(5) complaint in debtor's bankruptcy proceedings, impliedly arguing that while the assignment to the state rendered any debts for pre-petition support installment payments dischargeable pursu-

---

1. Section 2334 of Title XXIII of the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, which reads in part:

   (b) Section 523(a)(5)(A) of Title 11, United States Code, is amended by inserting before the semicolon the following: "(other than debts assigned pursuant to Section 402(a)(26) of the Social Security Act)."

   (c) The amendments made by this section shall become effective on the date of the enactment of this Act.

2. *see* note 1 *supra*

3. A copy of the *Morris* II decision is attached to this order and is incorporated by reference.

4. Chief Judge Stuart's opinion affirmed the bankruptcy court's decision on the question whether debts for child support installment payments due subsequent to the filing of a debtor's bankruptcy petition fall within the 11 U.S.C. § 101(4) definition of a claim and are thus dischargeable in that debtor's bankruptcy proceedings. The case was remanded to the bankruptcy court, however, for a consideration of the constitutionality of 11 U.S.C. § 523(a)(5) (1976 ed. Supp. III). *See In re Morris*, 10 B.R. 448, 455, 456 (Bkrtcy. N.D. IA, 1981) (hereinafter referred to as *Morris I*) (upholding the constitutionality of the section).

ant to the then-11 U.S.C. § 523(a)(5)(A), any debts for future support payments would be nondischargeable because they would arise after the order for relief and would not be included within the scope of the debtor's discharge. The Court held that the assignment had rendered all debts of the debtor for past *and* future support installment payments dischargeable under then-11 U.S.C. § 523(a)(5)(A). *Id.* at 434. In essence, the Court reasoned as follows. The word "debt," as it is used in § 523(a)(5) and throughout the Bankruptcy Code, is defined by 11 U.S.C. § 101(11) to mean "liability on a claim." *Id.* at 433. The Code further defines "claim" in § 101(4) in expansive terms. *Id.* Section 101(4) states:

Section 101.

"(4) 'claim' means—

(a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmature, disputed, undisputed, legal, secured, or unsecured; or

(b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; ..."

*Id.* The Court went on to state that the existence of a "claim" in a bankruptcy proceeding depends on when the claim arose. *Id.* In the absence of overriding federal law, state law determines when a claim arises. *Id.* Iowa law vests a spouse with the right, which he or she can assign, to receive alimony or support payments when a dissolution decree containing such payment provisions become a final binding judgment. *Id.* at 433–434 (citing *Silver v. Shebetka,* 245 Iowa 965, 65 N.W.2d 173, 175 (1954)). Since the dissolution decree pre-dated the order for relief in debtor's bankruptcy proceeding, the assigned right to support payments pre-dated the order for relief, constituted a claim under 11 U.S.C. § 101(4), and thus was dischargeable pursuant to the then-§ 523(a)(5)(A) and § 524. *Id.* The Court concluded:

The debtor became liable for all child support payments when he was judicially ordered to pay them. The operative facts giving rise to the obligation were all extant prior to bankruptcy. The post-bankruptcy installments may not have become judgments and they were contingent and unmatured, but § 101(4) discounts such considerations entirely. The liability of the debtor for the state's claim to post-bankruptcy child support payments gives rise to a 'debt' which is dischargeable in bankruptcy.

*Id.* at 434 (footnote omitted).

The Plaintiff has filed a brief in this case. In it, the Plaintiff makes two arguments. The Plaintiff's first argument, basically, is that Congress could not have intended to render a debtor's liability for future support payments dischargeable. The Plaintiff, however, neither engages in any statutory analysis nor cites any legislative history that would indicate such a legislative intent. The Plaintiff only cites a Supreme Court interpretation of "debt" in the context of alimony and bankruptcy discharge. *Wetmore v. Markoe,* 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904). This citation to the *Wetmore* case, however, is not helpful. A 1904 Supreme Court case under the Bankruptcy Act of 1898 hardly sheds light on the interpretation of a term in a statute enacted in 1978. This is especially the case where the language of the definition of that term, and the legislative history concerning it, indicate that the term is more expansive than that found in the Bankruptcy Act of 1898. *See* 11 U.S.C. §§ 101(11), 101(4); *see also* H.R.Rep.No.595, 95th Cong., 1st Sess. 309, 310 (1977); S.Rep.No. 989, 95th Cong., 2d Sess. 21–22, 23 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

More to the point is the following rule of statutory construction quoted by the Plaintiff: "Unless positively required by direct enactment, the Courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the

law a means of avoiding enforcement of the obligations, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children." *Wetmore v. Markoe, supra*, at 77, 25 S.Ct. at 176. Section 523(a)(5), however, is just such a "direct enactment." It discharges alimony, support and maintenance payments to the extent that such debts have been assigned by the debtor's ex-spouse to a third person or entity, including a governmental unit. As noted by the *Thomas* court, the Bankruptcy Code defines "debt" to mean "liability on a claim," 11 U.S.C. § 101(11), and further defines "claim" in expansive terms, 11 U.S.C. § 101(4). *In the Matter of Thomas, supra*, at 433–34. The legislative history that the Plaintiff overlooks further states:

> The definition [of claim] is any *right to payment*, whether or not reduced to judgment, liquidated, *unliquidated*, fixed, *contingent*, matured, *unmatured*, disputed, undisputed, *legal, equitable*, secured, or unsecured. The definition also includes as a claim an equitable right to performance that does not give rise to a right to payment. *By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.*

H.R.Rep.No.595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, p. 6266; S.Rep.No.989, 95th Cong., 2d Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, p. 5808 (emphasis supplied)

Thus, the conclusion that assigned child support installment payments fixed by a state court dissolution decree and due subsequent to the date of the filing of the Defendant's bankruptcy petition are dischargeable is inescapable. The dissolution decree setting forth the Defendant's support obligation became a final binding judgment prior to the filing of the Defendant's bankruptcy petition. See *In the Matter of Thomas, supra*, at 433–434 (citing *Silver v. Sebetka, supra*, 65 N.W.2d at 175). The Defendant's obligation, which had been assigned by his ex-spouse to the state in return for ADC payments, to make such support payments was, therefore, a claim in his bankruptcy proceedings and such obligation, including installment payments accruing under such obligation subsequent to the filing of Defendant's bankruptcy petition, was included within the scope of the Defendant's bankruptcy discharge. The Court, therefore, is persuaded to follow *In the Matter of Thomas, supra*, and to so hold. *See, also, State of Minn. ex rel Daggett v. Barr*, 315 N.W.2d 805, 808 (Iowa, 1982) (following *In the Matter of Thomas, supra*).

The Plaintiff's second argument is that the Debtor's support obligations are not totally discharged, even if the debtor's ex-spouse has assigned her right to support payments, because § 523(a)(5) states that assigned support payments are discharged only "to the extent" that they have been assigned. The Plaintiff argues that the Defendant's support obligation continues and would reattach once there has been a reassignment from the state to the ex-spouse. The *Thomas* Court implicitly adopts this position.[5] The Plaintiff concedes, however, that such a reassignment has not occurred in the instant case. The question is not, therefore, before the Court, and the Court will not decide it.

---

5. *Any debt arising from a claim that Jacquelyn Thomas may have personally for the right to child support payments arising under the decree of dissolution of marriage here is not intended to be affected by this decision. The court would venture that an assignment of the state's claim to past child support payments to Jacquelyn Thomas designed to reinstate her personal rights would be a trespass on this decision.*

*In the Matter of Thomas, supra*, at 434 n.* (emphasis supplied).

The question of the dischargeability of the right to receive support payments that has been reassigned to the debtor's ex-spouse will not arise as long as an ex-spouse continues to receive ADC payments because federal law, 42 U.S.C. § 602(a)(26), requires that support payments be assigned to the state as long as the ex-spouse continues to receive ADC assistance.

In summary, the Court finds that debts arising from past and future failure to pay support payments that have been fixed by a dissolution decree that predates the filing of a debtor's bankruptcy petition and that have been assigned to the state are dischargeable in the defendant's bankruptcy proceedings. The Court does not address the question whether a reassignment from the state to the debtor's ex-spouse would render nondischargeable debts arising from future failure to pay such support payments. The Court further concludes that the pre-trial conference on any remaining issues will be reconvened, by separate Order of this Court.

## ORDER

The matter before the Court is the Plaintiff's 11 U.S.C. § 523(a)(5) Complaint, seeking a determination that assigned child support installment payments fixed by a state court dissolution decree and due subsequent to the date of the filing of the defendant's bankruptcy petition are nondischargeable in the Defendant's bankruptcy proceedings. A pre-trial conference was held on this Complaint. Present was: David A. Sergeant, Attorney for the Defendant. The Court raised the question of the applicability, to the facts of this case, of the amendment to 11 U.S.C. § 523(a)(5). The Court found that the Pre-trial Conference would be continued, pending the Court's determination of the question of the applicability of such amendment. The Court further found that, because the question raised by the Plaintiff's Complaint was solely a legal one and because the facts necessary for the resolution of such questions were undisputed, the Court would decide such question in its ruling on the question of the applicability of the amendment to 11 U.S.C. § 523(a)(5). The Court, having considered the record and the applicable law, now makes the following Findings of Fact, Conclusions of Law, and Orders:

## FINDINGS OF FACTS

1. The Defendant, Wayne Elmer Ware, filed his Bankruptcy Petition in this Court on April 17, 1981, which was prior to the effective date of the amendment to 11 U.S.C. § 523(a)(5). The effective date of the amendment to 11 U.S.C. § 523(a)(5) was August 13, 1981.

2. Prior to the filing of the Defendant's Bankruptcy Petition, the Defendant and Lois Ware were granted a dissolution of their marriage. In the Decree of Dissolution, Lois Ware was awarded $200.00 per month child support payments for the couple's four minor children.

3. Prior to the filing of the Defendant's Bankruptcy Petition, Lois Ware assigned her right to such support payments to the Iowa State Department of Social Services in return for assistance under the Aid to Dependent Children Program.

## CONCLUSIONS OF LAW

1. The Amendment to 11 U.S.C. § 523(a)(5), which changes bankruptcy law to render nondischargeable support payments assigned to the state under § 402(a)(26) of the Social Security Act, became effective on the date of its enactment, which was August 13, 1981.

2. The law to be applied in determining whether support payments assigned by a debtor's ex-spouse to a governmental unit in return for ADC payments are dischargeable is the law in effect at the time the debtor files his bankruptcy petition.

3. Because the Debtor in the instant case filed his Bankruptcy Petition prior to the effective date of the amendment to 11 U.S.C. § 523(a)(5), the law to be applied is the law in effect prior to the effective date of that amendment. That law discharged debts for alimony, support, or maintenance payments that had been assigned by a debtor's ex-spouse to any person or entity, including a governmental unit. The support payment assigned by the debtor's spouse to the Iowa State Department of Social Services are, therefore, dischargeable.

4. Both pre-petition and post-petition child support debts are dischargeable as to Bankruptcy Petition filed before August 13, 1981.

## ORDERS

IT IS THEREFORE ORDERED that all pre-petition and post-petition debts arising from the failure to pay support payments that have been assigned by the Defendant's ex-spouse to the Plaintiff are dischargeable.

IT IS FURTHER ORDERED that the pretrial conference on any remaining issues will be reconvened by separate Order of this Court.